UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NATIONWIDE MUTUAL INSURANCE
COMPANY,

      Plaintiff,

      v.

Civil Action 2:11-cv-00629
Judge George C. Smith
Magistrate Judge E.A. Preston Deavers

LARRY WENHOLD,

      Defendants.

## REPORT AND RECOMMENDATION

This matter is before the Court for consideration of Plaintiff's Motion to Remand Case to State Court.  (ECF No. 9.)  The parties dispute whether Defendant has satisfied his burden of demonstrating that the amount in controversy in this case exceeds $75,000.  For the reasons that follow, it is **RECOMMENDED** that the Court **DENY** Plaintiff's Motion to Remand.

### I.  BACKGROUND

Defendant, Larry Wenhold, is a principal independent contractor agent of Plaintiff, Nationwide Mutual Insurance Company.  The instance action involves a dispute over the succession process that Plaintiff will apply to Defendant's agency.  Plaintiff filed this action in the Franklin County Court of Common Pleas, seeking declaratory relief.  Plaintiff seeks a declaration that it is entitled to apply its current policies relating to agency succession and is under no contractual obligation to apply a former succession plan.  Defendant, on the other hand, maintains in a counter-claim that Plaintiff is contractually obligated to apply the former plan and is currently in breach of contract.

The prior succession plan, which Defendant asserts resulted in a contractual obligation, was in place until 2003.  This plan allowed an agent whose agency met certain standards to appoint a qualified successor.  Most importantly, for the purposes of the current Motion, Defendant submits that succession under this plan did not include a purchase price that Plaintiff would collect.[1]  (*See* Notice Removal ¶ 10, ECF No. 1; Wenhold Decl. ¶ 2, ECF No. 1-1.)  In 1994, pursuant to this process, Defendant nominated his daughter, Wendy Wenhold, to be the successor for his agency.[2]  The parties dispute, assuming this prior plan applies, whether Defendant's agency still meets the requirements for succession and whether Wendy Wenhold is a qualified successor.

Beginning in 2003, Plaintiff began making changes to its succession policy.  These changes ultimately resulted in the current policy, known as the Replacement Agency Executive Program, that Plaintiff seeks to apply to the succession of Defendant's agency.  The current policy places various qualification requirements on any person who wishes to acquire the servicing rights of an agency.  The current policy also places production goals on the successor.  Finally, and once again most importantly for the current Motion, the current policy requires any successor to purchase the agency's servicing rights from Plaintiff for valuable consideration.

In 2009, Defendant notified Plaintiff that he wished to retire and attempted to initiate the succession procession.  The parties' disagreement as to which succession approach to apply ultimately led Plaintiff to commence this action in the Franklin County Court of Common Pleas.

---

[1] Plaintiff, in moving for remand, has not contested this point.

[2] Defendant has submitted a document entitled "Our Succession Plan" designating Wendy Wenhold as his successor, which both he and an "Agency Manager" signed.  (ECF No. 10-2.)

On July 15, 2011, Defendant removed the action to this Court claiming diversity jurisdiction. Defendant asserts that the amount in controversy exceeds $75,000, in part because Plaintiff is seeking a purchase price of over $900,000 for the succession of his agency to his daughter. To support this assertion, Defendant relies on a proposed Replacement Agency Executive Program Performance Agreement that Plaintiff provided Defendant on May 4, 2011.[3] (*See* RAE Agreement, ECF No. 17-1.) The proposed agreement sets the purchase price, valuing the servicing rights of Defendant's agency, at $912,566. (*Id.* at 12.)

Plaintiff moved to remand this case to state court on August 15, 2011. Plaintiff submits that Defendant has failed to demonstrate that the amount in controversy exceeds $75,000. According to Plaintiff, there is no amount in controversy because it is seeking only declaratory judgment as to its contractual rights. Plaintiff stresses that a grant of the declaratory relief it seeks would not place an obligation on anyone to pay the purchase price. Additionally, Plaintiff notes that Ms. Weinhold is not a party to this suit, and that any damages she may incur as a result of this case may not be taken into account in assessing the amount in controversy.

Plaintiff also maintains that the value of the object of litigation is too speculative to satisfy the amount in controversy. Plaintiff specifically contends that the value of its ability to enforce its policies cannot be quantified. With regard to any purchase price, Plaintiff submits that the value of an agency is the result of a variety of ever-changing factors and cannot be determined until a transition event (*i.e.*, an agent's retirement, disability, or death) actually occurs. Plaintiff emphasizes that the Replacement Agency Executive Program Performance

---

[3] Defendant attached this document to its Memorandum in Opposition of Plaintiff's Motion to Remand. Due to the confidential nature of this document, the Court has placed it under seal.

Agreement Defendant provided is a confidential settlement document that is not binding on either party. According to Plaintiff, the parties drafted this document as part of a larger attempt to resolve this dispute without litigation. Finally, Plaintiff submits that the value of Defendant's agency has been declining since 2007.

## II. STANDARD

The Court has diversity jurisdiction over actions between citizens of different states "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs . . . ." 28 U.S.C. § 1332(a). "The party invoking federal court jurisdiction . . . has the burden of demonstrating by competent proof that the complete-diversity and amount-in-controversy requirements are met." *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, 559 (6th Cir. 2010). A removing defendant "has the burden of showing that the [amount in controversy] more likely than not is satisfied." *Id.* (internal quotations omitted). This standard, however, "does not place upon the defendant the daunting burden of proving, to a legal certainty" that the amount in question is "not less than the amount-in-controversy requirement." *Hayes v. Equitable Energy Res Co.*, 266 F.3d 560, 572 (6th Cir. 2001).

## III. ANALYSIS

Plaintiff maintains that Defendant has failed to demonstrate the required amount in controversy. Based on the evidence of record, the Court concludes that Defendant has demonstrated that the amount in controversy more likely than not exceeds $75,000.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Freeland v. Liberty Mut. Fire Ins. Co.*, 632 F.3d 250, 253 (6th Cir. 2011) (quoting *Hunt v. Wash. State Apple Adver.*

*Comm'n*, 432 U.S. 333, 347 (1977)).  The United States Court of Appeals for the Sixth Circuit has interpreted this approach to mean that the amount in controversy "is the value of consequences which may result from the litigation."  *Freeland*, 632 F.3d at 253; *see also Lodal, Inc. v. Home Ins. Co. of Illinois*, 156 F.3d 1230, 1998 WL 393766, at *3 (6th Cir. June 12, 1998) (table) (holding, in case involving a dispute over insurance company's duty to defend its insured and pay up to $200,000, that the district court properly considered "the potential value of future claims under the policy" in assessing the amount in controversy); *MJR Intern., Inc. v. Am. Arbitration Ass'n*, No. 2:06-cv-0937, 2007 WL 1101250, at *2 (S.D. Ohio Apr. 11, 2007) (noting that courts typically determine the value of declaratory relief relating to arbitration proceedings by looking to the possible amount at stake in the arbitration); *Mt. Hawley Ins. Co. v. Packers Sanitation Services, Inc., Ltd.*, No. 1:06CV2569, 2007 WL 1959216, at *3 (N.D. Ohio June 22, 2007) (indicating that in declaratory judgment actions a court "should look to a plaintiff's potential future losses for purposes of determining whether the amount in controversy requirement is met").

       The Sixth Circuit "has yet to decide whether [it] view[s] the amount in controversy from the perspective of the plaintiff or the defendant."  *Northup Properties, Inc. v. Chesapeake Appalachia, L.L.C.*, 567 F.3d 767, 770 n.1 (6th Cir. 2009).  Certain decisions of the Sixth Circuit, however, provide that the amount in controversy may be determined "from the perspective of the plaintiff, with a focus on the economic value of the rights he [or she] seeks to protect."  *Smith v. Nationwide Property & Cas. Ins. Co.*, 505 F.3d 401, 407 (6th Cir. 2007) (internal quotations omitted).  This Court has also held that "the better approach is to determine the amount in controversy from the perspective of the plaintiff . . . ."  *Buckeye Recyclers v. CHEP USA*, 228 F.Supp.2d 818, 821 (S.D. Ohio 2002).

Because Plaintiff's action is for declaratory relief, the Court must assess the value to Plaintiff of the consequences that may result from the litigation. Here, Plaintiff seeks a declaration that it is entitled to apply its current succession process and is under no contractual obligation to apply its former succession process to Defendant's agency. The Court must, in its analysis, construe the circumstances comprehensively to determine the consequences of this entire litigation. The Court, therefore, is not persuaded by Plaintiff's basic contention that a declaration under the circumstances has no value. Rather, the value is the difference between the economic consequences of applying the two approaches. Based on the parties' assertions and evidence before the Court, the primary difference—at least from a valuation perspective—is the purchase price Plaintiff will collect under the two different succession plans. Defendant submits that the pre-2003 succession plan did not require the successor to purchase the agency in question. Under the current policy, however, a successor has to purchase the servicing rights of the agency from Plaintiff.

Consequently, to assess the amount in controversy from Plaintiff's perspective, the Court must consider what purchase price Plaintiff will charge for Defendant's agency assuming it applies the current plan. Defendant has presented evidence, through its submission of the draft Replacement Agency Executive Program Performance Agreement, that as of May 4, 2011 Plaintiff valued the relevant servicing rights at $ 912,566.[4] The Court finds this evidence

---

[4] The Court acknowledges Plaintiff's position that this document was confidential in nature, is not binding on the parties, and was part of a larger attempt to resolve this dispute prior to litigation. Nevertheless, the Court finds nothing inappropriate in considering a document of this nature to assess the amount in controversy. *See, e.g.*, *Carroll v. Stryker Corp.*, --- F.3d ----, ----, 2011 WL 3890455, at *5 n.2 (7th Cir. 2011) (holding that settlement offers "are admissible to show that the amount in controversy for jurisdictional purposes has been met"); *McPhail v. Deere & Co.*, 529 F.3d 947, 956 (10th Cir. 2008) ("[A] plaintiff's proposed settlement amount is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of

persuasive in assessing the potential purchase price and the value of this litigation to Plaintiff. Specifically, the proposed agreement provides a recent estimate of the purchase price Plaintiff would seek under its current plan. Even assuming a wide margin of fluctuation in this figure, it is substantially above the jurisdictional minimum. Finally, although Plaintiff raises other potential issues with the proposed agreement, it does not maintain that the figure represented an unreasonable or inaccurate estimation of the value of Defendant's agency as of May 2011.

      The Court ultimately concludes that Defendant has satisfied his burden of demonstrating that the amount in controversy more likely than not exceeds $75,000. Viewing the parties' positions and the potential consequences that might result, it is clear that over $75,000 is at stake in this dispute. Defendant contends that Plaintiff is contractually obligated to apply its pre-2003 succession plan and that both his agency and his daughter continue to meet the eligibility standards under this plan. If Defendant is correct, succession will occur without a purchase price. Plaintiff maintains that it is entitled to apply its current succession process and no contractual obligation exists. If Plaintiff is correct, it will be able to charge a purchase price to the successor, or any other acquirer, in an amount that, in all probability, will exceed $75,000.

      The Court recognizes that, even assuming that the pre-2003 succession plan applies, the parties dispute whether Defendant's agency and daughter meet the plan's requirements. Accordingly, it is possible that even applying the prior plan cost-free succession might not occur. Nevertheless, the declaratory judgment plaintiff seeks will eliminate any chance that Ms. Wenhold will succeed Defendant without payment to Plaintiff. Consequently, given the

---

the plaintiff's claim.") (internal quotations omitted).

potential amount of the purchase price at stake, the undersigned finds it highly unlikely that the value of declaratory judgment to Plaintiff is below the jurisdictional minimum.

The remainder of Plaintiff's contentions are also unavailing.  First, assessment of the jurisdictional amount is not overly speculative or immeasurable in this case.  Rather, the proposed agreement before the Court provides a substantial estimate of the value of Defendant's agency as of May 2011.  The Court acknowledges that valuing Defendant's agency depends on a variety of factors that do not remain static.  Plaintiff, however, appears to overestimate the precision that this jurisdictional inquiry requires.  After all, Defendant must only demonstrate that the amount in controversy more likely than not exceeds $75,000.  Although Plaintiff has provided some reason to believe that the value of Defendant's agency might decline, the Court finds it unlikely that the value of the agency will decline below, or even near, the jurisdictional threshold during the course of this litigation.

Second, the Court discounts Plaintiff's contentions that declaratory judgment will not obligate anyone to pay for Defendant's agency, and that Ms. Wenhold is not a party to this suit. As detailed above, this Court considers the value of declaratory judgment from the perspective of the plaintiff.  Declaratory judgment here could assure Plaintiff the ability to charge payment for the servicing rights of Defendant's agency.  Plaintiff contends that when an exclusive agent retires "[i]n the ordinary course of events, Nationwide then sells the servicing rights to [the] book of policies to one or more other independent contractor exclusive agents."  (Todd Bevington Decl. ¶ 3, ECF No. 21-1.)  Accordingly, even assuming Ms. Wenhold would choose not to pay the purchase price for succession, Plaintiff would then be able to sell Defendant's servicing rights to other agents, presumably for a comparable price.

## IV.  CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's Motion to Remand.  (ECF No. 9.)

## V.  NOTICE

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy of the objections. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

Date:  November 15, 2011 /s/ *Elizabeth A. Preston Deavers*
Elizabeth A. Preston Deavers
United States Magistrate Judge